INHABITANTS OF WARREN *versus* INHABITANTS OF THOMASTON.

To establish a residence within the meaning of the statute there must be personal presence without any present intention to depart; and to break up such residence when once established there must be departure with intention to abandon.

The fact of abandonment depends upon the intention of the pauper when he departs; and whether his anticipations of business fail so that he returns sooner or later is wholly immaterial.

The word domicile is synonymous with residence and home, and a different meaning is unauthorized.

To acquire and maintain a residence or home it is not necessary that a person be at all times personally present in such place or have a particular house to which he may resort as matter of right.

This action is assumpsit for the support of a pauper, and comes before the full court upon exceptions to the rulings of MAY, J., and on motion. The exceptions only are considered in the opinion of the court. The action was brought March 29, 1855, and the question is whether the pauper gained a settlement in the defendant town by a continued residence of five years. It was admitted that he had received no supplies as a pauper from any town other than those sued for in this action.

The verdict being for the plaintiffs the defendants excepted to the instructions of the presiding judge.

It appeared from the evidence that the pauper first went to Thomaston in the spring of 1838 and worked six months for Jeremiah Gilman, when he left for Massachusetts and staid a short time, worked for Gilman again six months in the summer of the ten following years, except 1841, and in the winter of 1847–'8 and 1848–'9, when he worked for his board. He was in different towns during the winter seasons, but it did not appear that he had any fixed place of residence or engaged in any permanent business during the winter months.

The pauper testified that he always intended to return to

Inhabitants of Warren *v.* Inhabitants of Thomaston.

Thomaston when he left at the end of his summers' engagements; and several witnesses testified to declarations when in the act of leaving Gilman's; that he did *not* intend to return there or to any other place in Thomaston.

The judge instructed the jury, among other appropriate instructions, to which no exception is taken, that persons who are unstable or restless in their character, and somewhat migratory in their habits, may and do acquire a *domicile* wherever they establish themselves for the time being with an intention to remain until inducement may arise to remove. Such persons, if so established in a place and removing there without any intention of *returning to the place from whence they came* or of *removing to any other place* will have a *domicile* in the place where they are so established.

If the jury are satisfied that the pauper acquired such a *domicile* in Thomaston it will continue until it is abandoned or lost, and it will not be abandoned or lost by merely forming an intention to remove to some other place unless such intention is actually carried into effect. Nor will it be abandoned or lost by occasional absences for mere temporary purposes.

If the pauper left his *domicile* at Gilman's in the fall with an intention of returning to *live there again in the following spring, such leaving of his domicile is not an abandonment of it; it will be regarded by law as continuing during his absence, although he might not have had an actual home, by consent or contract,* or any right to reside in any particular family in the town where his *domicile* was during such residence, and if under such circumstances he did return in the spring to his place of domicile in accordance with his intention and expectation when he left, his *domicile* will have continued during his absence, and the time he was thus absent may be computed by the jury as a part of the five years in the same manner as if he had not left.

If the pauper left with an intention not to return again under any circumstances, and so at the time he left had an

intention to abandon his domicile in Thomaston, if he had any there, and did so abandon it, such abandonment will interrupt the running of the five years, even though he had no design to establish himself elsewhere. *But if when he left he had an expectation or intention of remaining somewhere else in case he could find some other place to suit him, (or in pursuance of some previous arrangement,)* and failing to find any such place, (*or being unable to complete his expected arrangement, did soon afterwards return, then his domicile might not be interrupted thereby,*) and if from all the facts in the case the jury are satisfied that when he left he intended to return if he failed in the object for which he left, then his *domicile* may be regarded as being in Thomaston during such absence.

The court was requested to instruct the jury, that,

1. In order to *commence* such a *residence* as the statute contemplates, the pauper must have gone to Thomaston with the intention of making that town his residence *permanently,* or for an *indefinite period* of time. And that if his purpose was simply to remain *six months,* and he had no fixed purpose or arrangement to remain after the six months expired, his continuance at that place during those six months was not a "*residence*" within the meaning of the statute.

2. That if he did go to Thomaston more than five successive summers, and at the close of each, he intended to return there the next spring, and work the next summer for a definite period, and he did in fact engage to work, and work six months or any other definite period each year, such acts would not constitute a "*residence*" for five years within the meaning of the statute.

3. That whether the pauper had a residence in this state or not, (if he had none in Thomaston,) if he only went to Thomaston with the purpose of staying a definite time, six months or any other fixed period, a stay there during such time is not "residence" within the meaning of the statute.

4. That he must have had such a residence in Thomaston

*during all the year* five consecutive years to entitle the plaintiffs to prevail, and if his residence did not continue during the winter season as well as the summer, they cannot prevail.

5. That when he went away from Thomaston, even if he did intend to return, if that intention was to return for a specified term of time only, as for a summer's work, his residence did not *continue*, even if he can be said to have one during the summer at Thomaston.

6. That if he had no residence *anywhere*, and went to Thomaston simply for the purpose of doing a summer's work, and with the intention of remaining a *fixed period*, and did work or stay a *fixed* period, such a remaining or stay in Thomaston was not a *residence* within the statute.

7. That he could have no residence or home at Mr. Gilman's without Mr. Gilman's consent, and that he had no power to continue his home or residence there in the winter when he was personally absent, without Mr. Gilman's consent.

8. If it does not appear that the pauper had a design to make the town of Thomaston, *as such*, his domicile, but simply to return to and reside at Mr. Gilman's, and make that his home, it must appear that he had a *right* to return to his, Gilman's, house, or else his domicile did not continue during his personal absence.

9. That the right to have and continue his residence at Gilman's involves both a voluntary intention on the part of Lawrence to go back and reside, and the voluntary consent of Gilman that he should do so, and the same rule applies to the winter seasons, when he was personally absent.

The first instruction requested was given.

The second was given with this qualification, ("*Providing that if when he left Gilman's he did intend to go back to some other place where he had a domicile;*") the jury were further instructed that if he had no other place to return to, but was at Gilman's without intention of returning when he had finished his summer's work, then they might find his *domicile*

in Thomaston if they were satisfied the evidence warranted it upon the instructions given.

The third requested instruction was given, but the jury in determining the question of *domicile* were left, so far as this request is concerned, to the general instructions in connection with this instruction, given as requested.

The fourth request was refused. The judge said he must have a domicile, but need not *reside* there in person, but must intend to return while away; he must have a *domicile*, but need not have a *home* there.

The fifth request was given with the further instruction, that if he had a *domicile* in Thomaston, and an intention when he left to return the next season, and did return, and had no *residence* or *home* elsewhere to go to, his *domicile* thereby would continue.

The sixth request was refused with the instruction to the jury that they would judge from the evidence whether he intended to remain there or not after such period had expired, that the fact of his hiring for six months was evidence which they would consider in connection with the fact that he intended to return when he left, and did return, if they should find such to be the facts from the evidence in determining whether he had a *domicile* in Thomaston or not, and whether it continued during his absence or not.

The seventh request was given, and the court instructed the jury that the pauper might have a *domicile* in a town in which he had no right to return to any particular place or family, even though he may have intended to return to a particular place or family in that town, when he had no previous consent so to return to such family, and that he may have a domicile in a town without a right to a home in any particular family.

The eighth request was given with the further instruction: but if satisfied when he left that he intended to return to Gilman's and work in the spring, and he did in fact so return, his domicile in Thomaston, if he had any, may be

regarded as continuing in Thomaston, notwithstanding nothing was said to or by Mr. Gilman about his right to return and make his house his *home*, if they were satisfied such were the facts. His domicile in a town would depend upon his own *intention* and not upon Mr. Gilman's.

The ninth was given, with the instruction that the pauper's domicile in the town of Thomaston, if he had any, might continue without Gilman being willing to have him reside at his house, even though he might intend to return to Gilman's. He might under such circumstances have a domicile in the town, without a right to return to, or reside at, Gilman's house.

The jury were further instructed in reference to the case, that the pauper's domicile depended on his *residence* and *intention*, and not necessarily upon any single fact in the case, and they would determine from all the facts in the case whether the pauper had a domicile in Thomaston for five successive years without receiving, directly or indirectly, any support or supplies as a pauper before the furnishing of the supplies sued for in this writ, and if he had such domicile the plaintiffs would be entitled to recover.

*A. P. Gould*, counsel for the defendants, submitted an able argument in support of the exceptions, contending that the pauper, in order to have a residence in Thomaston, within the meaning of the statute, must have gone there with the intention of remaining an *indefinite period of time*, and in order to gain a *settlement* must have continued that residence five years. This he never did. He always *went* there to work for a definite, fixed period, and so continued during the whole time.

The first request is said to have been given, but it is so qualified, restricted, and *contradicted* in the other instructions, as to destroy its force and effect upon the minds of the jury.

There is but one mode in which the plaintiffs undertake to prove the settlement of the pauper in Thomaston, *i.e.*, by

showing that he *resided* there five years, the *sixth* mode, under our present statute.

Several terms have been employed by the courts in their discussion of the pauper laws. *Residence, dwelling-place,* and *home,* have been used as synonymous terms. And sometimes the term *domicile* is used as meaning the same thing, but not with entire accuracy, and its use perhaps tends to mislead. One may have a *home* or residence where he has no *settlement;* and so he may have a settlement where he has no *home* or residence, as in case of a *derivative* settlement. But when it is sought to prove that a pauper has acquired a *settlement* in a particular place, by *five years' residence,* it must appear that his residence was of such a character as to constitute that place his *home* during *all that period,* the word " *reside* " in our statute, is used in the same sense as the word " dwell, and has his *home* " in Stat., 1821, chap. 122, sec. 2.

By this term the legislature meant to designate some *permanent* abode, or residence, with an *intention to remain.* Turner v. Buckfield, 3 Maine R., 229, 231; Jefferson v. Washington, 19 Maine R., 293, 301. In the last case the court held that the terms *residence, dwelling-place* and *home,* have a more " *precise and local* application," when spoken of " as being requisite to establish the settlement of paupers," than the word *domicile.* But the latter term is in very common use in connection with the pauper laws; and when so used is to be understood in the sense of *residence,* or *home,* and not in the technical sense, as in cases arising under international law, and kindred cases.

The second request should have been given without qualification. This is the substance of it: " If the pauper went to Thomaston for the sole purpose of remaining a definite period, and *did in fact* work six months each year for five years, such acts would not constitute a five years' residence, so as to create a *settlement* there. Even though at the end of each summer's work, when he left Thomaston, he intended to

return there the next year, and work *another fixed period.*"
There can be no doubt about the accuracy of this proposition.
It cannot be pretended that *going* to Thomaston with *such*
intentions, and continuing there six months, with such inten-
tions, was a *removal to that place* " *with a design of making
it his home for an indefinite period of time ;*" or of making it
" *a permanent place of abode,*" which numerous cases show
is necessary. But it was not given except with the qualifi-
cation " if when he left Gilman's, he did not intend to go
back to some other place, where he *had a domicile.* It was
entirely immaterial *where* the pauper intended to go, if when
he *left,* he did not design to return to Thomaston, to remain
for an *indefinite period.* It is indeed, of no consequence,
whether he had *any home,* in this state, or if having one,
whether he intended to *visit it,* or to *wander about.* We are
examining his residence *in Thomaston,* to see whether it was
of such a character as to create a *settlement* for him there,
and this can in no respect depend upon the question whether
he had a *settlement, home, domicile* or *residence* any where
else. See Jefferson v. Washington, 19 Maine R., 293, 302;
Phillips v. Kingfield, 19 Maine R., 375, 381.

The jury were further instructed in reply to the same
request, that if the pauper had no other place to return to,
but was at Gilman's without the intention of returning, (to
some domicile,) then they might consider his domicile as
established at Thomaston. Thus making his domicile or
home, in Thomaston, depend, *not upon his being there with
the intention of remaining permanently,* but upon the fact of
his having a domicile *somewhere else to which he intended to
return,* when he had done work in Thomaston; that is, he
could have a *domicile* or statute *residence* in Thomaston,
without the *animo manendi.*

If that be so, that place where a vagrant, having no home,
stops over night, is his home, and he resides there, within
the meaning of the statute.

The third request is said to have been given, " but the jury

were left so far as this request is concerned, to the general instructions," which are entirely inconsistent with the law of the request. So that it in effect was refused. What he had just said to them, in reply to the second request, was an improper restriction upon it, and was contradictory to it.

Subsequent instructions were also inconsistent with it, as we shall see.

The fourth request was refused. It should most clearly have been given. The request was that he must have had such a residence during all the year," &c., i. e., such a residence as had been spoken of in the previous requests: "residence within the meaning of the statute," as stated in the previous request—home, place of abode, *animo manendi*.

He says, "he must have a domicile, but need not reside there," &c.; "he must have a domicile, but need not have a *home there*." He does not explain to the jury what meaning he attaches to the word *domicile*, or how it differs from home or residence. If he used it in a different sense from those two words, then he was in error; for it is *only* in the sense of those words that it is proper to use it, in a pauper case.

In Jefferson v. Washington, 19 Maine R., 381, the court say, "It is expressly decided that the words dwelling-place, and home, mean some permanent abode or residence, with the intention to remain," and on the same page they say, "Some confusion may have arisen from having seemingly confounded dwelling-place and home with domicile, in international law." In Phillips v. Kingfield, 19 Maine R., 381, residence and home are used as synonymous.

In Kennebunkport v. Buxton, 26 Maine R., 61, 67, and 68, in commenting upon the sixth and seventh modes of obtaining a settlement under our statute, the court say, "It is manifest that being "resident," and "having his home" as mentioned in the seventh mode of gaining a settlement, mean the same thing." "And where residence is mentioned in the preceding mode of gaining a settlement, (i. e., the sixth,) it

was intended to have the same force as dwelling and having his home."

So again in Brewer v. Linneus, 36 Maine R., 228, 230, it is said "the residence required by the statute means the same thing as having his home there."

The fifth request should have been given without the qualification. The qualification involves the same error as the answer to the second. The instruction taken with the request, amounts to this, that, if when the pauper left Thomaston, "he intended to return for a specified time only, his domicile would thereby be continued while he was away from Thomaston, if he had no residence or home elsewhere to go to." The comments upon the second request are equally applicable here.

The reply to the fifth request, made the sixth request necessary. This was refused, and the refusal presents distinctly the error.

We have then, in this refusal, the distinct denial of the proposition, that if the pauper had *no residence anywhere*, *i. e.*, if he was a vagrant, and went to Thomaston simply for the purpose of doing a summer's work, and with the intention of remaining a fixed period, and did work or stay a fixed period, such remaining or stay in Thomaston did not constitute a *residence* within the statute.

It has been held in this state, that a man may abandon his home, *and thereupon cease to have any home.*" Exeter v. Brighton, 15 Maine R., 58. (See further 19 Maine R., 302.)

To allege that a person, thus *without* a home, would *acquire one*, and become a *resident* in the sense of the statute, by *engaging to work at a place for six months*, without intending to remain longer than that, *at such place*, is taking ground that is not tenable.

In all the cases in the reports, where the residence, which, when continued five years, constitutes *settlement*, is spoken of, it is spoken of as residence *animo manendi*, and this not *temporarily*, but *permanently* or *indefinitely*.

*Second.* The 7th, 8th and 9th requests present another

difficulty in the way of the pauper's gaining a settlement in Thomaston.

It is clearly laid down in Corinth v. Lincoln, 34 Maine R., 311, that in order to have a residence or *home* in a particular family, a person must have such family's *consent*. It is true that a person may have a home in a certain town without having a *house* there, or a place of *fixed abode*. But this can only be the case where the pauper intends to make the *town, as such*, his home.

The *seventh* request is said to have been given; but it is immediately contradicted by what follows. The jury are told that " the pauper might have a domicile in a town in which he had no right to return to any particular place, or family in that town, even though he may have intended to return to a particular place or family in that town, when he had no previous consent so to return to such family.

Thereupon the eighth request was made, distinctly pre- senting the difficulty in the case, arising upon the evidence. " If it does not appear that the pauper designed to make the town of Thomaston as such his domicile, (using that term at the request of the judge,) but simply to return to, and reside at Mr. Gilman's, and make that his home, it must appear that he had a right to his, Mr. Gilman's house, or else his domi- cile did not continue during his personal absence."

This request appears to have been given also, and to have been contradicted in the qualification. The judge tells the jury, " But if satisfied when he left, that he intended to return to Gilman's, and work in the spring, his domicile in Thomaston may be regarded as continuing, notwithstanding nothing was said to or by Mr. Gilman about his right to return and make his house his home." His domicile in town would depend upon *his own* intention, and not upon Mr. Gil- man's." It is to be remembered that this was in answer to the distinct presentation of the difficulty arising upon the fact that the pauper had no intention to return to the town, as such.

The ninth request is in the very language of the court in

Corinth v. Lincoln, referring back to the state of facts presented in the eighth, thus connecting them together.

If Corinth v. Lincoln is law, then this is not.

In the case of Wiscasset v. Boothbay, 3 Maine R., 354, the judge instructed the jury that " the pauper being of age and emancipated by his father, the question whether the house of the latter was to be considered the pauper's home, *would depend upon the will of the father, who might refuse to grant him this privilege.*" And this ruling seems to have been sustained by the full court.

*M. H. Smith,* counsel for plaintiff.

RICE, J. The case comes up on motion and exceptions. The motion is based upon several specifications, which may, however, be reduced to two general propositions. First, that the verdict is against the evidence in the case. Second, that it is against law. The first proposition may properly be discussed under the motion; the second under the exceptions.

The question at issue was the legal settlement of a pauper by the name of Lawrence. It appears from the case that the original derivative settlement of the pauper was in Warren. The proposition to be established by the plaintiffs was, that he had lost that settlement and gained one in Thomaston, in his own right. If such change has been effected it was under the sixth mode of R. S., sec. 1, chap. 32, which provides, that any person of the age of twenty-one years, who shall hereafter reside in any town within this state, for the term of five years together, and shall not, during that term, receive, directly nor indirectly, any supplies or support as a pauper, from any town, shall thereby gain a settlement in such town."

The rights of the parties, in this case, depend very much upon the meaning which is attached to the word " *reside,*" as used in the statute provision above cited.

To reside is to dwell permanently, or for a length of time; to have a settled abode for a time. Web. Dict. The word

*residence* is synonymous with the words *dwelling-place* or *home*. Drew v. Drew, 37 Maine R., 389. Dwelling-place and home mean some permanent abode or residence with intention to remain. Turner v. Buckfield, 3 Maine R. 229; Jefferson v. Whitefield, 19 Maine R., 293.

In our pauper law the terms residence, dwelling-place, home, have a different meaning from the word settlement. The place of one's settlement is a place where such person has a legal right to support as a pauper. It may be in a place other than the one where such pauper has his dwelling-place, home, or residence. Thus a person may have a settlement in a place where he has never had a residence, as by derivation. So, too, a person may have a residence or home different from their settlement.

Residence in a given place does not necessarily involve continued personal presence in that place. A person may be temporarily absent, and remain from home, without a change of residence. Drew v. Drew, 37 Maine R., 389.

When, however, a person voluntarily takes up his abode in a given place, with intention to remain permanently, or for an indefinite period of time; or, to speak more accurately, when a person takes up his abode in a given place, without any present intention to remove therefrom, such place of abode becomes his residence or home, and will continue to be his residence or home, notwithstanding temporary personal absences, until he shall depart with intention to abandon such home.

Thus to establish a "residence," within the meaning of the statute, there must be personal presence without any present intention to depart. And to break up such residence, when once established, there must be departure with intention to abandon.

In the discussions in our books upon the pauper laws the term *domicile* is frequently used. This term is not found in the statute, but has been interpolated upon it by the courts. Its introduction has, at times, it is feared, tended to confuse and mislead, rather than to simplify and aid in the trial of

this class of causes. In its ordinary sense, as used by legal writers, it has not the same restricted meaning as the words residence, dwelling-place, and home have in the statute under consideration. Story's Con. Law, 39. See, also, as to change of domicile. Ib., p. 47, sec. 47.

The term domicile, therefore, not being used in the statute to indicate any particular status of the pauper, as to habitation, can only be used properly as strictly synonymous with the term residence, dwelling-place or home. In any other sense its use would be erroneous and tend to mislead. Whether the judge, at the trial, in his frequent use of this word, thus limited its signification, is not certain. In presenting a cause to a jury it is of great importance that the terms used should be distinctly and clearly defined, and that the legal propositions involved should be so arranged and presented as to be easily understood. Otherwise confusion and uncertainty will be likely to follow.

In his general charge to the jury the judge says : " But if when he (the pauper) left he had an expectation or intention of removing somewhere else, in case he could find some other place to suit him, or in pursuance of some previous arrangement, and failing to find such place, or being unable to complete his expected arrangement, did soon afterwards return, then his domicile might not be interrupted thereby." This was evidently based upon the hypothesis that the jury should have found that the pauper had before taken up his residence in Thomaston. As a distinct legal proposition it is incorrect. If Lawrence had made arrangements for business elsewhere, and when he left Thomaston to engage in that business did so with the intention not to return, such departure would be an abandonment of his residence in that town, and whether he found his expected business as he had anticipated or not would be wholly immaterial. The fact of abandonment, or not, depended upon the intention of the pauper when he departed. But it may be said, if there is any defect in this proposition, it was fully remedied in the instructions which immediately follow, wherein the judge

says, " And if from all the facts in the case, the jury are sat-
isfied that when he left he intended to return, if he failed in
the object for which he left, then his domicile may be regard-
ed as being in Thomaston during such absence." The in-
firmity in the instruction, when taken as a whole, is the un-
certainty in which the jury were left. Distinct legal propo-
sitions are announced by the court, apparently conflicting,
and so left as not clearly to indicate to the jury the precise
rule by which they are to be governed.

The second request was, " That if he did go to Thomaston
more than five successive summers, and at the close of each,
he intended to return there the next spring, and work the
next summer for a definite period, and he did in fact engage
to work, and work six months, or any other definite period
each year, such acts would not constitute a *residence* for five
years, within the meaning of the statute."

This request was given with qualification, " Providing that
if when he left Gilman's, he did intend to go back to some
other place where he had a domicile." This limitation or
qualification is clearly improper. The true question to be
decided was not whether he intended to return to any par-
ticular place when he should leave Gilman's, but whether he
was at Gilman's for a specific purpose, and for a definite pe-
riod of time, intending to leave when that purpose had been
accomplished and that time had expired. It was entirely
immaterial whether he intended to return to a place from
whence he came, or where he had a domicile, or to go to
some other place in search of a new home. In further quali-
fication of the second request, the jury were also instructed
" that if he had no other place to return to, but was at Gil-
man's without intention of returning when he had finished
his summer's work, then they might find his domicile in
Thomaston, if they were satisfied the evidence warranted it
upon the instructions given."

Here again is uncertainty or manifest error. It is not dis-
c  tly perceived how he could have intended to return to a
place, if he had no place to return to. But as already re-

marked, it is immaterial whether he had or had not a particular place in view to which he intended to return. Did he intend to make Gilman's or Thomaston his home? Was he in that town intending to remain an indefinite period of time, or rather without any intention to go elsewhere? If so, then he was *residing* in Thomaston, within the meaning of the statute. If not, he was a temporary sojourner, not a resident. The qualification leaves this point in uncertainty.

The fourth was refused. It was as follows: "That he must have had such a residence in Thomaston *during all the year*, five consecutive years, to entitle the plaintiffs to prevail, and if his residence did not continue during the winter season as well as the summer, they could not prevail."

In refusing this request, the judge said, "he must have a domicile, but need not reside there in person, but must intend to return while he was away; he must have a domicile, but need not have a home there."

Here perplexing uncertainty arises by the introduction of the word *domicile*, a word not found in the statute, and apparently attaching to it a meaning different from *residence* or *home*, which are the words of the statute. Thus the statute provides that any person of the age of twenty-one years who shall *reside* in any town in this state, &c., shall gain a settlement. The court say he must have a domicile, but need *not reside* there in person—he must have a domicile, but need *not* have a *home* there.

If the judge intended to use the word *domicile* as synonymous with *residence* and *home*, the language used is repugnant and contradictory. If he intended to use the word as having a meaning different from *residence* or *home*, such use would be unauthorized. But if he intended to use the word domicile as strictly synonymous with *residence* or *home*, and only intended to say that to acquire and maintain such a residence or home, it was not necessary that a person should be at all times personally present in such place, or should have a particular house to which he could resort as matter of right, the principle intended to be enunciated would be

correct.    But the difficulty is, the language used as report-
ed, is not appropriate to convey such idea.    The jury could
not have so understood it.

There are other objections to the instruction of the court
in this case, which have been argued at considerable length,
but being of opinion, for reasons already suggested, that the
case should be again presented to a jury, it is not deemed
important to give them further consideration at this time.
Nor is it necessary to examine the questions raised by the
motion.

*Exceptions sustained and a new trial granted.*