[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Regional School District 8 appeals a decision of the defendant state department of education holding Region 8 responsible for the funding of school accommodations for Mirta Rodriguez. Also named as defendants are the Derby Board of Education; the Bridgeport Board of Education; Mirta's mother, Maria Rodriguez; and Mirta's sister, Carmen Rodriguez. The department acted pursuant to General Statutes § 10-186. The plaintiff appeals pursuant to General Statutes §§ 10-187 and 4-183. The court finds the issues in favor of the CT Page 9504 plaintiff.
Certain essential facts are undisputed and fully reflected in the record. Mirta was born on November 15, 1972. Mirta is blind, profoundly retarded, nonambulatory and suffers from seizure disorders. Until 1983, Mirta resided in Bridgeport with her mother, Maria. At that time she was a "child(ren) requiring special education" within the meaning of General Statutes § 10-76a(e). In 1983, Mirta was placed at the Oak Hill School in Hartford, which is owned and operated by the Connecticut Institute for the Blind, a private organization. In 1990, the Oak Hill School moved Mirta to a group home that it operates in Hebron. Hebron is in the Region 8 School District.
Until 1992, both Maria and Mirta's sister, Carmen, lived in Bridgeport. In January of 1992, Carmen moved to Derby. On January 17, 1992, the Probate Court in Hebron appointed Carmen to be Mirta's plenary guardian. The Probate Court appointed Maria to be Mirta's standby plenary guardian.
In August 1992, the Bridgeport Board of Education, having discovered that Mirta's plenary guardian then resided in Derby, petitioned the department for a due process hearing. Bridgeport claimed that since Mirta's plenary guardian had moved from Bridgeport to Derby, Derby should be responsible for the funding of Mirta's school accommodations. Derby denied that it was responsible for the funding of Mirta's school accommodations.
On September 17, 1992, Carmen filed with the department an appeal of Derby's determination that Mirta was not a resident of Derby and that it was therefore not obligated to fund Mirta's school accommodations. The department established an impartial hearing board to hold a public hearing in regard to Mirta's accommodations and a hearing was held on October 28, 1992. On October 2, 1992, before the hearing, the department ordered the joinder of the Bridgeport Board and Region 8 as interested parties.
At the hearing, Carmen Rodriguez appeared in behalf CT Page 9505 of her ward, Mirta; and counsel appeared representing the municipalities of Derby and Bridgeport. Region 8 did not appear or otherwise participate in the hearing.
Following the hearing, the hearing board issued its final decision. The board found that Mirta was placed in the Oak Hill School by her mother rather than by a public agency and, therefore, it held that General Statutes § 10-76d(e)(2) does not apply to this case. The board also held that "statutes such as" § 10-76d(e)(2) are not applicable because Mirta, at age nineteen, "is not a `child,' she is of legal age," citing § 1-1d. The board's decision then states that "stripped of the legal fictions contained in the education statutes used for determining financial responsibility, Mirta's residence can be determined using common law principles and simple logic." Although the board acknowledged that the common law criteria for determining residency include both the person's physical presence and his or her intention to remain in the jurisdiction, it held in this case that the intention of the guardian may be considered, noting that Mirta is incapable of forming any such intention. Finding that Mirta's guardian does not want her moved from the institution in Hebron and that she is, of course, physically present there, the board concluded that her residence is in Hebron. Accordingly, the board held that Region 8, which includes Hebron, is financially responsible for Mirta's education.
In its brief to the court in opposition to Region 8's appeal, the town of Derby argues that the appeal should be dismissed for failure of Region 8 to exhaust its administrative remedies. The court must "fully resolve" this jurisdictional question before considering the merits of the appeal. Castro v. Viera, 207 Conn. 420,429 (1988).
The basis of Derby's argument on exhaustion of remedies is that Region 8 did not appear at the administrative hearing nor did it file a brief at that stage of the proceeding. Derby cites Lloyd v. Gerl,13 Conn. App. 641, 645 (1988), in support of its position. In that case, however, the Appellate Court based its decision in significant part on the fact that the plaintiff did not even appeal the administrative CT Page 9506 decision, and the case is distinguishable on that basis. The court held that "(the plaintiff's) unexcused failure to appear before the administrative agency and hersubsequent failure to appeal from the originaladministrative determination shows a complete disregard for the administrative process." In the present case, there was an administrative proceeding and hearing that was initiated by other parties. These parties appeared and presented evidence at the hearing. The administrative decision was adverse to the plaintiff Region 8, and it is unquestionably aggrieved thereby. There is no further administrative remedy available, and it has duly appealed to this court in accordance with the provisions of the Uniform Administrative Procedure Act, General Statutes § 4-183. Under these circumstances, the fact that the plaintiff did not appear or participate at the administrative hearing does not constitute a failure to exhaust its administrative remedies so as to deprive this court of jurisdiction.
Before addressing the plaintiff's arguments on appeal, a review of the relevant statutory provisions for special education financing is appropriate. General Statutes §§ 10-184, 10-186 and 10-76d(a) and (b) establish the general rule that the town or school district where an eligible child resides is obligated to provide special education for the child. Section 10-76d(d) provides that a local board of education may, with the consent of the parent or guardian, enter into an agreement with a private agency or institution to provide the required special education to a child residing in its jurisdiction. Implicit in that statute is the obligation of the municipality to fund the cost of the education provided by the private institution. Section 10-76d(e)(1) provides a procedure for a parent or guardian to place a child in a private institution for special education and obtain reimbursement for the cost from the local board of education. Section 10-76d(e)(2) provides that if a public agency other than the local board of education places a child in a private institution for special education, the local board is responsible for the cost. Section10-76a(b) defines "child" for purposes of these statutes as a person under the age of twenty-one.
Plaintiff Region 8 raises three issues as the bases CT Page 9507 of its appeal to this court: (1) that the board erroneously found as a fact that Mirta's mother, not a public agency, initially placed her in the Oak Hill School for the special education that she required; (2) that the board erroneously held as a matter of law that § 10-76d does not apply to a person over the age of eighteen; and (3) that the board erroneously found that Mirta is a resident of Hebron.
"Judicial review of [an administrative agency's] action is governed by. . . [General Statutes §§ 4-166 to 4-189], and the scope of that review is very restricted." (Citations omitted; internal quotation marks omitted) NewHaven v. Freedom of Information Commission, 205 Conn. 767,773, 535 A.2d 1297 (1988), quoting C HEnterprises, Inc. v. Commissioner of Motor Vehicles,176 Conn. 11, 12, 404 A.2d 864 (1978).
 With regard to questions of fact, it is neither the function of the trial court nor of [the supreme court] to retry the case or to substitute its judgment for that of the administrative agency . . . . Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion.
Connecticut Light Power v. DPUC, 219 Conn. 51, 57-58,591 A.2d 1231 (1991), quoting Griffin Hospital v.Commission on Hospitals Health Care, 200 Conn. 489,496, 512 A.2d 199 (1986).
While those general principles impose a significant burden on an appellant seeking reversal of an agency's factual findings, the court may nevertheless not allow such findings to stand unless they are supported by substantial evidence in the administrative record. General Statutes § 4-183(j). CT Page 9508
In this case, the only evidence in the record that Mirta's initial placement in the Oak Hill School was made by her mother is the testimony of Carmen. She testified that the placement "was voluntary, however, recommended by I think DMR." She elaborated on this by stating that she and her mother had looked for an appropriate institution for Mirta, that she had heard of Oak Hill through a friend, that she consulted a social worker, and that ultimately "they, you know, later we made steps to place her into the Oak Hill." This testimony, if corroborated by other evidence, might support a finding that Mirta's mother acted on her own and without any action on the part of the board of education of Bridgeport, where the family indisputably resided at the time. Testimony by another witness at the hearing, however, clearly indicates that the placement decision was made in a different statutory context.
Nancy Phillips, Coordinator of Special Education for the Bridgeport board of education, testified that Mirta's mother and a social worker employed by the department of mental retardation approached the Bridgeport board to request a change in Mirta's special education program. She testified that "after hearing the facts in the matter, Bridgeport did agree to place Mirta at Oak Hill for educational reasons. Thus, obligating the district to the total cost." She then testified that Bridgeport covered the cost of the placement and would have continued to do so until Mirta reached the age of twenty-one.
Anna Eddy, the Director of Education at Oak Hill, testified that that institution made the decision to transfer Mirta from its facility in Hartford to its facility in Hebron.
The testimony of witnesses Phillips and Eddy does not support the hearing board's finding that Mirta's mother, acting alone, placed her at Oak Hill and, by implication, subsequently at the facility in Hebron. Rather, that testimony tends much more strongly to indicate that the placement was made by Bridgeport, with the consent of the parent, in accordance with § 10-76d(d). And Carmen's testimony on the subject is not inconsistent with that conclusion. For those reasons, the court finds that the hearing board's factual finding CT Page 9509 concerning the placement of Mirta at Oak Hill in Hartford and subsequently in Hebron was not supported by substantial evidence in the record and, consequently, was in error.
The second issue raised by the plaintiff concerns the board's legal conclusion that § 10-76d does not apply to the funding of special education for Mirta because, at age nineteen, she is not a "child." The stated basis of the board's conclusion is § 1-1d. That statute, however, merely provides that the age of majority is eighteen. It does not affect the obligation of a municipality under the special education statutes, including the relevant provisions of § 10-76d, to continue to provide special education to an eligible student until he or she attains age twenty-one. Such a person is still a "child" for purposes of the special education statutes until age twenty-one. The board's conclusion to the contrary was an error of law.
The third issue raised by the plaintiff concerns the board's finding (1) that Mirta is a resident of Hebron and (2) that, as a result, Hebron/Region 8 is obligated to provide her special education.
In its determination of Mirta's residency, the board adopted common law principles of residency found in such cases as Martinez v. Bynum, 461 U.S. 321 (1983); Yale v.West Middle School District, 59 Conn. 489, 22 A. 295
(1890); New Haven v. Torrington, 132 Conn. 194,43 A.2d 455 (1945), overruled on other grounds, Anderson v.Bridgeport, 134 Conn. 260, 269 (1947); and Town ofMadison v. Connecticut State Board of Education, Court of Common Pleas, New Haven County (No. 110686, 1977).
 `When. . . a person voluntarily takes up his abode in a given place, with intention to remain permanently, or for an indefinite period of time; or, to speak more accurately, when a person takes up his abode in a given place, without any present intention to remove therefrom, such place of abode becomes his residence . . . .' Inhabitants of Warren v. InhabitantsCT Page 9510 of Thomaston, 43 Me. 406, 418
(1857). This classic two-part definition of residence has been recognized as a minimum standard in a wide range of contexts time and time again.
(Emphasis added.) Martinez v. Bynum, supra, 461 U.S. 331.
The first prong of the common law residency test, physical presence in the location is not in dispute; Mirta is clearly ensconced in the facility in Hebron.
The second prong of the residency test requires intent on the part of the person to remain in the location permanently or for an indefinite period of time. As indicated previously, Mirta is blind, profoundly retarded, non-ambulatory and suffers from seizure disorders. The board adopted the Probate Court's finding that Mirta is clearly unable to function or able to make decisions for herself. The board also found that "[i]n this case. . . although Mirta is physically present in Hebron, there is no evidence of her intention to remain there." This finding is overly conservative. All of the evidence on the subject is undisputed and establishes that Mirta is incapable of forming an intent to reside Hebron.
In its quest to establish Mirta's legal residence, and because the evidence could not establish any intent on her part, the board considered and ultimately relied upon the intent of Mirta's guardian, Carmen. Neither the board's decision nor counsel in their briefs, however, have supplied the court with any statutory or case law authority for such a substitution. The board cites § 45a-677(d), which permits a guardian of a mentally retarded person to consent to the ward's placement in an appropriate institution. Nothing in that statute, however, suggests that such action is sufficient to affect the ward's legal residence.
The court has considered the evidence in the whole record, as well as the arguments of counsel on the subject, and concludes that there is not sufficient CT Page 9511 evidence of the required intent to support the board's factual finding that Mirta is a legal resident of Hebron. Furthermore, it was an error of law to substitute Carmen's intent for that of Mirta's in attempting to ascertain the latter's legal residence.
The court has addressed the issue of Mirta's residence as it might be determined by familiar common law principles because that issue assumed such prominence in the board's decision. The board's more fundamental error was in concluding that Mirta's physical location, age or residence automatically determined which municipality is obligated to provide her special education. As indicated in the discussion of the special education statutory scheme, it is those statutes that determine responsibility for the cost of such education, not laws governing age of majority or common law residency. If, as all of the evidence strongly suggests, Bridgeport with the consent of Mirta's mother arranged for Mirta to be placed in Oak Hill, the provisions of § 10-76d(d) would govern the funding of that placement and any extension of that placement, including the shift to the facility in Hebron, until Mirta attained the age of twenty-one.
Bridgeport's placement of Mirta at Oak Hill in Hartford did not sever her link to Bridgeport, nor did it relieve Bridgeport of the obligation to continue to fund her special education. Oak Hill's subsequent transfer of Mirta to its facility in Hebron, likewise, did not sever Mirta's link to Bridgeport nor relieve Bridgeport of its obligation. In short, Mirta's physical location or change in that location did not, under the special education laws, affect the obligation of Bridgeport to fund her education.
If, as Bridgeport alleges, the change in the residence of Mirta's guardian from Bridgeport to Derby is sufficient under the law and/or the department's regulations to sever Mirta's special education link to Bridgeport, there is still nothing in those laws or regulations to change that link to Hartford or Hebron, the towns where she was living when Bridgeport was responsible for the cost. In short, there is nothing in the facts of this case or the applicable law or CT Page 9512 regulations that confers the obligation to fund Mirta's special education on Hebron or plaintiff Region 8.
The court is not called upon in this appeal to determine whether Bridgeport or Derby is obligated to fund Mirta's special education. Therefore, the appeal of plaintiff Region 8 is simply sustained.
MALONEY, J.